IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

GRALYN D. JOHNSON                                                PLAINTIFF

V.                                    CIVIL ACTION NO. 1:14-CV-226-KS-MTP

MISSISSIPPI POWER COMPANY                                        DEFENDANT

## MEMORANDUM OPINION AND ORDER

For the reasons stated below, the Court **grants** Defendant's Motion for Summary Judgment [56]. The Court will enter a separate final judgment.

## I. BACKGROUND

This is a Title VII racial discrimination case. Plaintiff is an African-American man. Defendant employed him as a lineman apprentice and lineman for approximately seven and a half years. Over the course of Plaintiff's employment, he committed five violations of safety procedures. After the fifth violation – in December 2011 – Defendant terminated him. The Court need only discuss two of the five incidents.[1]

On April 27, 2010, Plaintiff was a member of a five-man crew when two hundred feet of wire rubbed against an energized line, creating a flash. Defendant concluded that the entire crew was responsible, and every crew member was given a written reprimand. Although Plaintiff was in the truck, Defendant concluded that he should have ensured that a job safety briefing was performed and stopped the work until appropriate protective measures were taken. Plaintiff acknowledged that he did not fulfill these

---

[1]Defendant provided evidence of all five incidents, but the Court only needs to discuss two in addressing the parties' primary arguments. The other three incidents are not in dispute.

responsibilities.

The final incident, which directly led to Plaintiff's termination, occurred on December 14, 2011. Plaintiff attempted to connect a ground line without obtaining clearance to do so, and he failed to test for voltage. Both are steps required by Defendant's safety procedures. Plaintiff's actions caused a flash and loss of area power. He admitted that the incident was his fault.

Defendant concluded that Plaintiff's history of safety violations – five over seven years – required his termination. Plaintiff's union appealed the termination, but it was upheld. Plaintiff later filed a charge of discrimination with the EEOC, claiming that Defendant subjected him to several adverse employment actions because of his race, including termination. He eventually filed this lawsuit, and the Court now addresses Defendant's Motion for Summary Judgment [56].

## II. STANDARD OF REVIEW

Rule 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010). "An issue is material if its resolution could affect the outcome of the action." *Sierra Club, Inc.*, 627 F.3d at 138. "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Cuadra*, 626 F.3d at 812.

The Court is not permitted to make credibility determinations or weigh the

evidence. *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009). When deciding whether a genuine fact issue exists, "the court must view the facts and the inference to be drawn therefrom in the light most favorable to the nonmoving party." *Sierra Club, Inc.*, 627 F.3d at 138. However, "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002).

### III. DISCUSSION

Title VII makes it unlawful for an employer to "discharge any individual . . . because of such individual's race . . . ." 42 U.S.C. § 2000e-2(a)(1). This Court applies a modified version of the *McDonnell Douglas* burden-shifting framework in Title VII discrimination cases. *Vaughn v. Woodforest Bank*, 665 F.3d 632, 636 (5th Cir. 2011). "To survive summary judgment under *McDonnell Douglas*, the plaintiff must first present evidence of a prima facie case of discrimination." *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 317 (5th Cir. 2004). To establish a prima facie case of discrimination, a plaintiff must present evidence that "(1) he is a member of a protected class, (2) he was qualified for the position at issue, (3) he was the subject of an adverse employment action, and (4) he was treated less favorably because of his membership in that protected class than were other similarly situated employees who were not members of the protected class, under nearly identical circumstances." *Wesley v. Gen. Drivers, Warehousemen & Local 745*, 660 F.3d 211, 213 (5th Cir. 2011).

"If the plaintiff presents a prima facie case, discrimination is presumed, and the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the underlying employment action." *Davis*, 383 F.3d at 317. "The employer's burden is one of production, not persuasion, and does not involve a credibility assessment." *Black v. Pan Am Labs., LLC*, 646 F.3d 254, 259 (5th Cir. 2011).

If the defendant can articulate a legitimate, nondiscriminatory reason for the underlying employment action, the presumption of discrimination disappears, and the plaintiff "must then offer sufficient evidence to create a genuine issue of material fct either (1) that [the defendant's] reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that [the defendant's] reason, while true, is only one of the reasons for its conduct, and another motivating factor is [the plaintiff's] protected characteristic (mixed-motives alternative)." *Vaughn*, 665 F.3d at 636. The plaintiff "bears the ultimate burden of persuading the trier of fact by a preponderance of the evidence that the employer intentionally discriminated against [him] because of [his] protected status." *Laxton v. Gap, Inc.*, 333 F.3d 572, 578 (5th Cir. 2003).

Plaintiff alleged several different discriminatory actions. The Court will address each in turn.[2]

## A.   *Failure to Promote*

Plaintiff conceded that his claim arising for Defendant's failure to promote him

---

[2]Plaintiff also asserted parallel Section 1981 claims. The framework governing discrimination claims arising under Title VII and § 1981 "is coextensive." *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014). Therefore, the Court's analysis applies to both Plaintiff's Title VII and Section 1981 claims.

is time-barred. Therefore, the Court grants Defendant's motion as to that claim.

**B.    *Bad Weather***

Plaintiff also claims that he was called out to work in "the worst of storms," while his white coworkers were not. Defendant argues that Plaintiff failed to exhaust his administrative remedies as to this claim.

"[A]n employee may not base a Title VII claim on an action that was not previously asserted in a formal charge of discrimination to the EEOC, or that could not be reasonably expected to grow out of the charge of discrimination." *Filer v. Donley*, 690 F.3d 643, 647 (5th Cir. 2012). The "question is whether the charge has stated sufficient facts to trigger an EEOC investigation, and to put an employer on notice of the existence and nature of the charges against him." *Simmons-Myers v. Caesars Entm't Corp.*, 515 F. App'x 269, 272-73 (5th Cir. 2013). Plaintiff's EEOC charge [1-1] contains no allegations concerning bad weather or Defendant's call-out practices, much less an allegation that Defendant called Plaintiff to work in bad weather because of his race. Therefore, Plaintiff's Title VII claim premised upon such actions is barred for failure to exhaust administrative remedies.[3]

**C.    *Cross-Training***

Next, Plaintiff alleges that Defendant did not allow him to cross-train as a substation electrician and electric serviceman because of his race. Defendant contends that failure to train is not an adverse employment action under Title VII.

---

[3]The Court also notes that Plaintiff failed to address this claim in briefing. Therefore, the Court assumes that Plaintiff has abandoned it.

Defendant is correct. "[A] refusal to train is not an adverse employment action under Title VII." *Hollimon v. Potter*, 365 F. App'x 546, 549 (5th Cir. 2010); *see also Shackelford v. DeLoitte & Touche, LLP*, 190 F.3d 398, 406-07 (5th Cir. 1999); *Liddell v. Northrop Grumman Shipbuilding, Inc.*, 836 F. Supp. 2d 443, 458 (S.D. Miss. 2011). Regardless, Plaintiff admitted during his deposition [56-2] that he was permitted to cross-train with electric servicemen. Therefore, the Court grants Defendant's motion for summary judgment as to Plaintiff's cross-training claim.[4]

## D.   *Termination*

Finally, Plaintiff claims that while he was terminated for causing a flash, a similarly situated white lineman was not terminated after a similar or more egregious safety violation. Defendant contends that Plaintiff can not make out a prima facie case of discrimination because the white lineman Plaintiff identified in briefing was not "similarly situated."[5]

To establish that he was treated differently than a similarly situated white lineman:

> [P]laintiff must show that . . . employees who were not members of the plaintiff's protected class were treated differently under circumstances nearly identical to his. The employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, shared the same supervisors or had their employment status determined by the same

[4]Once again, Plaintiff failed to address this claim in briefing. Therefore, the Court assumes it was abandoned.

[5]Plaintiff initially pled [1] that several white linemen were treated more favorably, but he only provided evidence and argument related to one.

person, and have essentially comparable violation histories. Moreover, the plaintiff's conduct that drew the adverse employment decisions must have been nearly identical to that of the proffered comparator who allegedly drew dissimilar employment decisions, because if the difference between the plaintiff's conduct and that of those alleged to be similarly situated accounts for the difference in treatment received from the employer, the employees are not similarly situated for the purposes of an employment discrimination analysis.

*Turner v. Kan. City S. Ry. Co.*, 675 F.3d 887, 892-93 (5th Cir. 2011). Also, employees "who were the subject of adverse employment actions too remote in time from that taken against the plaintiff generally will not be deemed similarly situated." *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009).

But "'nearly identical' is not synonymous with 'identical.'" *Turner*, 675 F.3d at 893. "[A] requirement of complete or total identity rather than near identity would be essentially insurmountable, as it would only be in the rarest of circumstances that the situations of two employees would be totally identical." *Id.* "[E]ach employee's track record . . . need not comprise the identical number of identical infractions," but they "must be comparable." *Id.* The Court must view the infractions from the perspective "of the employer at the time of the adverse employment decision." *Id.*

Plaintiff claims [60-1] that when a similarly situated white employee, Brett Cuevas, caused a flash on April 27, 2010, Defendant disciplined the entire crew, while it only disciplined Plaintiff for the incident on December 14, 2011. The evidence demonstrates, though, that the circumstances surrounding the two incidents were not "nearly identical."

Defendant determined that the entire crew was responsible for the April 2010

incident. Two hundred feet of wire rubbed against an energized line, creating a flash. In its documentation [56-2] of Plaintiff's written reprimand, it stated that all employees present "failed to ensure than an adequate Job Safety Briefing was performed," and that "after recognizing the hazard of pulling the conductors across energized services, the employees continued to pull the conductors before all the services were covered. This resulted in a secondary flash and damage to the customer's property." Defendant concluded that Plaintiff contributed to the April 2010 incident by "failing to ensure that an adequate Job Safety Briefing was performed and not speaking up to stop work until protective measures were installed . . . ." Plaintiff signed the document and wrote that he would "make sure that there is a more detailed job briefing and will stop job if needed to keep everyone safe" in the future. He also acknowledged at deposition [56-2] that he had a responsibility to do so under Defendant's policies.

Defendant also provided an affidavit [62-2] from Cleve Adams, an African-American Lead Lineman who supervised Plaintiff for several years. Adams described the April 2010 incident: "On April 27, 2010, an incident occurred which resulted in a secondary flash and property damage. I was Lead Lineman of that crew. [Defendant] determined that the entire crew was at fault for the incident and all crew members received a disciplinary action. The crew consisted of five Caucasians and three African-Americans including myself and [Plaintiff]."

In contrast, Adams provided the following description [62-2] of the December 14, 2011, incident which directly led to Plaintiff's termination:

8

> I was also present as the Lead Lineman when the incident occurred on December 14, 2011. I conducted a job safety briefing prior to beginning the work. Brett Cuevas performed the first part of the work. He was not finished with his portion when [Plaintiff] attempted to connect a temporary ground. [Plaintiff] had not received clearance to do so. He also failed to test for the absence of voltage. Both of these steps are required by [Defendant's] safety regulations and procedures. A flash occurred as a result of [Plaintiff] attempting to connect the ground without following the proper procedures.

Adams concluded that Plaintiff "should not perform work as a lineman" because he "often forgot to perform crucial steps such as when he did not test for the absence of voltage on December 14, 2011. The incident was extremely serious and could have resulted in more serious property damage and even death for [Plaintiff]." Plaintiff admitted during his deposition [56-2] that he did not communicate with the other lineman or test for voltage before connecting the ground, and that the December 2011 incident was his fault.

Therefore, the two incidents are not "nearly identical" because the record contains undisputed evidence that Defendant concluded that the entire crew was at fault for the April 27, 2010, incident, while it concluded that only Plaintiff was at fault for the December 14, 2011, incident. Plaintiff apparently disagrees with Defendant's conclusion, but he has provided no evidence – beyond his own conclusory *ipse dixit* – that Cuevas was responsible for the April 2010 incident, rather than the entire crew. The Court also observes that Plaintiff admitted during his deposition [56-2] that he himself had failed to fulfill certain responsibilities with respect to the April 2010 incident.

Even if Plaintiff had presented some evidence to support his claim that Cuevas was solely responsible for the April 2010 flash, "[t]he existence of competing evidence about the objective correctness of a fact underlying a defendant's proffered explanation

does not in itself make reasonable an inference that the defendant was not truly motivated by its proffered justification." *Little v. Republic Refining Co.*, 924 F.2d 93, 97 (5th Cir. 1991). Indeed, Title VII does not require an employer "to make proper decisions, only non-discriminatory ones." *Bryant v. Compass Group USA, Inc.*, 413 F.3d 471, 478 (5th Cir. 2005). "[E]ven an incorrect belief that an employee's performance is inadequate constitutes a legitimate, non-discriminatory reason." *Little*, 924 F.2d at 97. "Employment discrimination laws are not intended to be a vehicle for judicial second-guessing of business decisions, nor . . . to transform the courts into personnel managers." *Bryant*, 413 F.3d at 478 (punctuation omitted).

For these reasons, the Court finds that Plaintiff failed to present sufficient evidence to demonstrate that "he was treated less favorably because of his [race] than were other similarly situated employees who were not members of [his race], under nearly identical circumstances." *Vaughn*, 665 F.3d at 636. Even if he had met the *prima facie* burden, he failed to provide evidence that Defendant's explanation was mere pretext for discrimination.

## IV. CONCLUSION

For the reasons stated above, the Court **grants** Defendant's Motion for Summary Judgment [56]. The Court will enter a separate final judgment.

SO ORDERED AND ADJUDGED this 12th day of November, 2014.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE